**Joan McFADDEN–PEEL, Plaintiff,**

v.

**STATEN ISLAND CABLE, Defendant.**

**No. 93–CV–3503 (JRB).**

United States District Court,
E.D. New York.

Dec. 29, 1994.

Martin Gringer, Franklin & Gringer, P.C., Garden City, NY, for plaintiff.

Dennis A. Lalli, Kauff, McClain & McGuire, New York City, for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

Defendant Staten Island Cable ("SIC") moves under Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

SIC seeks dismissal of the complaint on the grounds that plaintiff has failed to set forth any evidence from which a reasonable jury could find that SIC's proffered reasons for eliminating her position and failing to offer her alternative positions were a pretext for age and sex discrimination.

## BACKGROUND

SIC began in 1986 as a joint venture between Gilbert Communications Co., L.P., and Cox Cable Communications ("Cox"). Until that time, there was no cable system on Staten Island.

Peter Gilbert, general partner of Gilbert Communications, was assigned full responsibility for managing SIC's operations. Plaintiff, as Director of Administration and Marketing, was one of four senior managers at SIC. She had oversight responsibility for customer service, sales, marketing, production, advertising, computers, and some installation functions. In addition to plaintiff, the senior management team consisted of: Henry Schwab, who was responsible for construction; Peter Schwab, who was responsible for service, facilities, the warehouse, and the remaining installation functions; and Charlie Simon, the comptroller. The team reported to Peter Gilbert, General Manager of SIC.

When Peter Gilbert died in 1989, his daughter Ruth Gilbert replaced him as General Manager. Shortly thereafter, Ruth Gilbert decided to sell her interest in SIC. In 1991, an entity owned by Time Warner Entertainment, L.P. ("TWE") entered into an agreement to acquire the 50% of SIC then owned by the Gilberts, as well as to manage the system in the Gilberts' place.

Richard Aurelio, President of the TWE New York City Cable group, decided to hire a new general manager for SIC. It was his choice whom to appoint to that position, subject to the right of Cox representatives to interview the final two candidates after Aurelio had screened out the rest. In response to an internal posting for candidates from within the TWE organization, twenty applications were generated. Additionally, Aurelio decided to consider members of the existing management team of SIC. The field was narrowed to five or six semi-finalists, including

McFadden, who Aurelio interviewed [1]. Cox representatives interviewed the two finalists selected by Aurelio, both men, and concurred in Aurelio's selection of Stephen Pagano.

In his deposition, Aurelio testified that he had sought Pagano's application. Prior to hiring him as SIC's General Manager, Aurelio had known Pagano for a number of years. At the time of his interview, Pagano was the Vice President in charge of marketing of the TWE-owned cable system serving Brooklyn and Queens. He had also served as president of the "Metro Cable Co-op", an affiliated group of cable systems in the New York metropolitan area that cooperates in marketing efforts.

Pagano began work at SIC on May 11, 1992. That same day, Pagano informed McFadden that her position would be eliminated as of July 31, 1992. SIC was to be restructured so that department heads who had been reporting to McFadden as Director of Administration and Marketing would report directly to the General Manager.

Shortly after Pagano began at SIC, he caused the position of Vice President of Marketing to be posted. (The position of Marketing Manager had been vacant since 1991 when TWE hired away SIC's previous marketing manager. At the request of Cox representatives, plaintiff had taken on those responsibilities in the interim.) SIC received ten resumes in response to the posting. Pagano interviewed candidates from within SIC, and McFadden was asked to interview the three candidates from outside SIC. McFadden herself was not considered for the position, although she testified that she had expressed interest in it to Pagano [2]. She further testified that he had refused to consider her, saying that the position was "beneath" her. Pagano hired Chris Van Name, with whom he previously had worked at the TWE Brooklyn–Queens cable system.

McFadden left SIC on July 31, 1994, at the age of 53. The duties of her former position were divided between that of General Manager and Vice President of Marketing. Stephen Pagano was 40 at the time he became SIC's General Manager. Chris Van Name was in his thirties when he was hired as Vice President of Marketing for SIC. Additionally, both of McFadden's male colleagues at the management team level, Peter Schwab and Henry Schwab (men in their forties), retained their positions following the restructuring.

## DISCUSSION

### I. Subject Matter Jurisdiction

The Court addresses first the threshold question as to whether plaintiff was an "employee" within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").

Under both the ADEA and Title VII, an employee is defined as "an individual employed by an employer." 29 U.S.C. § 630(f); 42 U.S.C. § 2000e(f). The protections of the ADEA and Title VII do not extend to independent contractors. *Frankel v. Bally, Inc.*, 987 F.2d 86, 88–89 (2d Cir. 1993); *see also Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d 793, 796 (2d Cir.1986). In order to determine whether McFadden was an employee or an independent contractor for purposes of the ADEA and Title VII, common-law agency principles are applicable. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, ——, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992) (where a statute containing the term "employee" does not helpfully define it, the court should conclude " 'that Congress intend[s] to describe the conventional master-servant relationship as understood by common-law agency doc-

---

**1.** Also among the semi-finalists was Henry Schwab; Peter Schwab did not compete for the position.

**2.** This point is disputed. Pagano asserts that he was not aware of plaintiff's interest in the position. However, for the purpose of this motion, it is assumed that plaintiff informed Pagano of her desire to be considered for the marketing position. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (all ambiguities and inferences should be resolved in favor of the party defending a summary judgment motion).

trine.'" (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739–40, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989)); *Frankel,* 987 F.2d at 90 (adopting common law agency test to determine who is an "employee" under ADEA).

■ The existence of a master-servant relationship is based on a flexible analysis of the "totality of the circumstances". *Frankel,* 987 F.2d at 90. The following factors are relevant to this inquiry:

the hiring party's right to control the manner and means by which the product is accomplished.... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Reid,* 490 U.S. at 751–52, 109 S.Ct. at 2179–80.

No single factor is determinative. *Id.,* 490 U.S. at 752, 109 S.Ct. at 2180.

■ Examining the circumstances of this case in light of the following facts, this Court concludes that plaintiff was an "employee" within the meaning of the ADEA and Title VII. At the time plaintiff was Director of Administration and Marketing, she worked at least 40 hours per week at SIC. Additionally, she worked approximately 10 hours per week as General Manager for Gateway Cable in Newark, New Jersey—another entity owned by Peter Gilbert. At the time of her termination, McFadden had worked in the SIC office since its inception more than five years earlier. As Director of Administration and Marketing, plaintiff had oversight responsibility on a day-to-day basis for customer service, sales, marketing, production, advertising, and computers—depart-

ments at the heart of SIC's business. She did not buy her own equipment, nor keep her own staff. SIC had the right to control the manner and means of plaintiff's work, although, undoubtedly, more control was exercised by Peter Gilbert than by his daughter, Ruth. SIC was free to assign additional tasks to her, and did. For instance, from 1991 to 1992, while the position of Marketing Manager was vacant, plaintiff was asked assume the duties of that position. Finally, with the exception of Gateway, another Gilbert enterprise, plaintiff did not provide "consulting services" to any other entity[3].

Defendant cites the following undisputed facts as evidence that, in her former position as Director of Administration and Marketing, plaintiff was an independent contractor and, thus, not protected under the ADEA or Title VII. Plaintiff was not paid a salary for her work at SIC or Gateway, rather she submitted bills in the name of "JNM Consulting". No taxes were withheld from plaintiff's checks. Neither SIC nor Gateway made any contributions to state unemployment insurance funds on plaintiff's behalf. She did not participate in employee pension or health insurance plans. On her income tax statement, McFadden listed her occupation as "consultant". The joint venture agreement which established SIC provided that plaintiff's position would be that of a consultant to SIC, and not an employee of SIC. Finally, plaintiff owned an equity interest in SIC and Gateway.

■ Although the corporate form under which plaintiff does business is an important consideration, it is not dispositive. *Frankel,* 987 F.2d at 91. Such designations frequently are made for the employer's benefit. Nor is the existence of a proprietary interest inconsistent with an employment relationship. *Hyland,* 794 F.2d 793. Rather, the court finds the quality of plaintiff's responsibilities to be the deciding factor. McFadden's duties as Director of Administration and Marketing, central as they were to SIC's functioning, were not of a kind normally

---

**3.** Although the "economic realities" test has been discarded by the Second Circuit, "factors relating to an individual's economic dependence upon the hiring party may be taken into account under the common law agency test...." *Frankel,* 987 F.2d at 90.

turned over to an independent contractor. Further, plaintiff's length of service at SIC also supports a finding that plaintiff was an "employee" protected by the ADEA and Title VII.

## II. *Summary Judgment*

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Second Circuit recently admonished district courts to be cautious in granting summary judgment motions in employment discrimination cases where, as here, intent is at issue. *Gallo v. Prudential Residential Serv., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). *See also McLee v. Chrysler Corp.,* 38 F.3d 67 (2d Cir.1994). Nonetheless, defendant may prevail on its motion where plaintiff's evidence is merely colorable, conclusory, speculative or not significantly probative such that a reasonable jury could not return a verdict in plaintiff's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## III. *Plaintiff's Age and Sex Discrimination Claims*

 Plaintiff alleges that SIC unlawfully discriminated against her on the bases of her age and gender. The ADEA provides that it is:

"unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a)(1) (1988). The ADEA protects persons forty years of age or older. *See id.* at § 631(a) (Supp.1994). Under the ADEA, the ultimate question is whether an employer discriminated against an employee on account of that person's age. *See* 29 U.S.C. § 623(a)(1). It is not unlawful, however, to discharge an employee "where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Similarly, Title VII provides that:

"[i]t shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex...."

42 U.S.C. § 2000e–2. In order to prevail on this claim, plaintiff must show that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred. *Montana v. First Federal S & L of Rochester,* 869 F.2d 100, 106 (2d Cir.1989); *see also Zahorik v. Cornell University,* 729 F.2d 85, 93–93 (2d Cir.1984).

## IV. *Burdens of Proof under the ADEA and Title VII*

 In deciding the present motion, the court employs the three-step burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). This analysis properly applies to age discrimination cases, *see, e.g., Woroski v. Nashua Corp.,* 31 F.3d 105 (2d Cir.1994); *Gallo,* 22 F.3d 1219, and to sex discrimination cases. *See, e.g., Montana,* 869 F.2d 100; *Christensen v. Bristol–Myers Squibb Co.,* 1994 WL 469382, 1994 U.S.Dist. LEXIS 12149 (S.D.N.Y.1994).

 Under the *McDonnell/Burdine* test, plaintiff first must make out a prima facie case of discrimination. Once she has, a presumption of unlawful discrimination arises, and the burden shifts to the employer to articulate a specific, non-discriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The shift in the burden of production does not affect the burden of persuasion, which remains on the plaintiff throughout. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant successfully articulates "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of

the employment action," *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747 (emphasis omitted), the burden of production shifts back to plaintiff to demonstrate " 'that the proffered reason was not the true reason for the employment decision,' and that [age and/or sex] was." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). To defeat defendant's motion, "plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence" that the employer's given reason is false *and* that discriminatory motivation was more likely than not for the discharge. *Gallo,* 22 F.3d at 1225.

### a. *Step One: Plaintiff's Prima Facie Case*

■ The *McDonnell/Burdine* analysis requires the employee to make a prima facie showing that 1) she was a member of a protected group; 2) she was qualified for the position; 3) she was discharged; and 4) the discharge occurred under circumstances giving rise to an inference of discrimination. *DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30 (2d Cir.1993); *Montana,* 869 F.2d 100. "[P]laintiff's burden of proof ... under the *McDonnell/Burdine* analysis is de minimis at this stage." *Gallo,* 22 F.3d at 1225.

■ McFadden successfully has established a prima facie case of age and sex discrimination. First, McFadden was a 53–year–old female at the time she was discharged, and so falls within the class of people protected under the ADEA and Title VII. Second, she was qualified for the three positions at issue. According to defendant, plaintiff was discharged because her position as Director of Administration and Marketing had become redundant due to restructuring, not because she was not qualified. Further, plaintiff asserts that she functioned as *de facto* General Manager from the time of Peter Gilbert's death in 1989 until Pagano was hired in 1992. Plaintiff's assertion is supported by Aurelio's deposition testimony that he was under the impression that McFadden had been running SIC for all practical purposes. Additionally, she had performed the duties of Marketing Manager for SIC since

the position went vacant in 1991. Third, the plaintiff was discharged. Finally, the discharge took place under circumstances that, if unexplained, give rise to an inference of age and sex discrimination. Plaintiff was the second oldest employee at SIC. She had worked for SIC as a member of its management team since its inception. She was the only employee terminated as a result of the TWE purchase. Significantly, although plaintiff's position was eliminated, its functions were not; instead, they were distributed between two positions, both filled by men ten to fifteen years younger than McFadden. Additionally, the restructuring only implicated plaintiff's position, the remaining members of the previous management team— both men in their forties—retained their positions. From this evidence, a reasonable fact-finder could infer that McFadden was disadvantaged in favor of younger, male employees, and thus made a victim of discrimination.

### b. *Step Two: Defendant's Rebuttal*

Having established a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the disputed action. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Gallo,* 22 F.3d at 1224.

■ Defendant has offered several non-discriminatory reasons for its actions. SIC characterizes its elimination of plaintiff's position as purely a business decision. Defendant asserts that TWE chose to purchase SIC because it viewed SIC's flawed marketing as an opportunity for expansion. It planned to increase market penetration by doing "a better job in marketing". *See* Aurelio Deposition, p. 13. In evaluating SIC's marketing approach under plaintiff's leadership, defendant specifically criticizes McFadden's decisions not to participate in the Metro Cable Co-op and the fact that discount installations were not used to attract new customers. Further, SIC states that it selected Pagano over plaintiff based on its knowledge of Pagano's work, Pagano's experience with TWE, and his knowledge of TWE's approach to marketing. Pagano chose Van Name for the same reasons. Fi-

nally, SIC avers that it eliminated plaintiff's former position because it had hired a more "hands-on" general manager and plaintiff's intermediary position was no longer needed.

#### c. *Step Three: Pretext*

■ As defendant has articulated nondiscriminatory reasons for its decision to eliminate McFadden's position and for not offering plaintiff an alternative position, the burden of production shifts again to plaintiff to show that SIC's stated reasons are merely a pretext for discrimination. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747. Plaintiff may rely on the "evidence that established her prima facie case, without any additional evidence being required," *Gallo,* 22 F.3d at 1226, or she may produce additional evidence. *Id.*

■ The Court acknowledges that this is a close case. Plaintiff's complaint is founded on the undisputed facts that: (1) her position was eliminated and she was terminated; (2) her duties were not eliminated but were divided between two positions; (3) defendant offered neither position to plaintiff; (4) both positions were filled by men ten to fifteen years younger than plaintiff, and; (5) defendant's restructuring did not affect either of plaintiff's male colleagues at the management team level.

Defendant contends that *DiCola,* 996 F.2d 30, controls this case. In *DiCola,* the Second Circuit affirmed a grant of summary judgment for an employer where an older employee, whose responsibilities had eroded over the course of a number of years, was terminated when his position was eliminated. *See also Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1110 (2d Cir.1988) (summary judgment for employer affirmed where an older employee, who "had little, if anything, to do" was terminated as part of organizational restructuring).

The court, however, finds cases relied on by plaintiff more nearly on point. In *Gallo,* 22 F.3d 1219, the Second Circuit reversed and remanded the district court's grant of summary judgment in favor of the employer where, within nine to ten months after an older employee's discharge, her duties which had been eliminated were resumed and assigned to younger employees. In *Montana,* 869 F.2d 100, the Second Circuit reversed and remanded a grant of summary judgment for an employer where, as a result of a internal reorganization, an older employee's position was eliminated. The duties of the position were not eliminated, however, but instead reassigned to younger employees. In both *Gallo* and *Montana,* the Court found evidence of pretext in the employer's failure to offer the employee an alternative position.

Plaintiff lists additional circumstances in support her charges of age and sex discrimination. As evidence of age discrimination, plaintiff directs attention to Cecil Outridge, manager of human resources and the oldest employee at SIC, who was offered a retirement package within months of plaintiff's discharge. Thus, SIC's two oldest employees left less than a year after TWE took over management control. As additional evidence, plaintiff avers that Pagano told her that he would not consider her for the position of Vice President of Marketing because it was "beneath" her. She argues that statements of this kind often mask discrimination. *Taggart v. Time Inc.,* 924 F.2d 43 (2d Cir. 1991) (grant of summary judgment for employer reversed and remanded where defendant did not consider plaintiff for a lessor position because he was "overqualified"); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 193 (2d Cir.1991) (policies against underemploying person may serve as mask for discrimination). Finally, plaintiff points to a statement made by Aurelio printed in *The New Yorker* to the effect that older people have difficulty adapting to the new interactive technology. Plaintiff argues that it was this bias coupled with TWE's desire to enter into the interactive market that led to her termination.

In support of her charge of sex discrimination, plaintiff directs the court's attention to SIC's stated concern that plaintiff would have difficulty in adapting to "corporate culture". She notes that SIC did not seem to be worried about the adaptability of her colleagues Henry and Peter Schwab, both of whose work histories mirrored plaintiff's own. She also points out that many of the female applicants who were not selected for

the position of Vice President of Marketing objectively had more impressive credentials than did the successful candidate, Van Name. Finally, plaintiff notes a pattern of sexism in the cable industry. At the time of her termination, she was the highest-ranked female cable executive in New York City and the only such female executive in her fifties.

After examining the evidence in the light most favorable to the plaintiff, this court cannot hold as a matter of law that it would be unreasonable for a jury to find in plaintiff's favor. On this motion, the court's sole task is limited to identifying genuine issues of material fact, not to resolving them. *Gallo,* 22 F.3d at 1224. Where at issue is discriminatory intent and state of mind, "[s]ummary judgment is ordinarily inappropriate...." *Montana,* 869 F.2d at 103; *see also, Gallo,* 22 F.3d at 1224; *Dister,* 859 F.2d at 1114. This case does not fall within the narrow range of employment discrimination cases which may be decided on motion.

## CONCLUSION

Accordingly, for the reasons set forth above, SIC's motion for summary judgment is hereby DENIED.

SO ORDERED.