**Carol J. KELLER, Plaintiff,**

v.

**NISKAYUNA CONSOLIDATED FIRE DISTRICT 1; Board of Fire Commissioners of Niskayuna Consolidated Fire District 1; the Schenectady County Civil Service Commission; and Joseph Battiste, Individually and as Chief of Niskayuna Consolidated Fire District 1, Defendants.**

**No. 97–CV–262 (LEK/DRH).**

United States District Court,
N.D. New York.

June 8, 1999.

Harris, Beach & Wilcox, L.L.P., Albany, NY, Mark J. McCarthy, of counsel, for plaintiff.

Schenectady County Attorney's Office, Schenectady, NY, Robert A. DePaula, of counsel, for defendant Schenectady County Civil Service Commission.

Gordon, Siegel, Mastro, Mullaney, Gordon & Galvin, P.C., Schenectady, NY, Joan L. Matthews, Ass't Attorney General, of counsel, for remaining defendants.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is a motion brought by defendants Niskayuna Consolidated Fire District 1 ("Fire District"), Board of Fire Commissioners of Niskayuna Consolidated Fire District 1 ("the Board of Fire Commissioners") and Joseph Battiste ("Battiste") (hereinafter collectively referred to as "defendants") pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss plaintiff's first cause of action. This claim alleges that defendants engaged in sex discrimination in their hiring practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. (1988). The defendants argue that jurisdiction is lacking because the Fire District is not an "employer" within the meaning of Title VII.

By Order filed on October 21, 1998, this Court found that discovery should be allowed on the jurisdictional issue and referred the action to Magistrate Judge David R. Homer. Discovery has now been completed, and the defendants have filed further evidence in support of their motion. Plaintiff has not filed any further submissions in opposition.

It is noted that plaintiff objects to defendants' reliance on matters outside the complaint in support of their motion to dismiss. When subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented in support of the motion by affidavit or otherwise. *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1010 (2d Cir.1986). Further, a court may resolve disputed jurisdictional fact issues, so long as those issues are sufficiently independent of the merits of plaintiff's underlying allegations. *See Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991); *Lawrence v. Dunbar,* 919 F.2d 1525, 1529–30 (11th Cir.1990) (per curiam) (holding that where jurisdiction is "inextricably intertwined" with the merits of the lawsuit, such that a decision on one would effectively decide the factual issues of the other, court may not resolve factual dispute).

Plaintiff argues that the defendants' motion, which asserts that the Fire District is not a Title VII employer, does not involve a jurisdictional question. However, the Supreme Court referred to the term "employer" as it is used in Title VII as "jurisdictional." *See E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248–49, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). Further, one court in this Circuit has expressly held that

> [i]n order to permit a court to exercise jurisdiction over a defendant in a Title VII case, the defendant must meet the statutory definition of an "employer."

*Serrano v. 900 5th Avenue Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998); *see also Guadagno v. Wallack Ader Levithan Assoc.,* 932 F.Supp. 94, 96 (S.D.N.Y.1996) (holding that "employer" definition must be satisfied for the court to have jurisdiction). Thus, defendants' motion to dismiss does present a question of subject matter jurisdiction and is properly brought under Fed.R.Civ.P. 12(b)(1).

It is also clear that any disputed factual issues may be resolved at this time,

since the jurisdictional question is independent of the merits of plaintiff's discrimination claim. Defendants' jurisdictional argument depends, as discussed more fully below, on whether the Fire District had at least fifteen employees during the relevant period, not on whether there have been any discriminatory hiring practices. In sum, it is appropriate to consider the submitted evidence and to resolve disputed fact issues underlying the jurisdictional question. It is further noted that the burden of proving jurisdiction is on the party asserting it. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994).

## II. Background

The Fire District is both a political subdivision and an incorporated entity within the Town of Niskayuna, New York. The Board of Fire Commissioners is its governing body. Battiste, the Fire District Chief, is charged with the direction and oversight of operations including the provision of fire and paramedic service within the relevant geographic area.

Plaintiff alleges that since 1987, she has repeatedly applied for a job with the defendants as a paid firefighter/paramedic. She further alleges that she has taken the Civil Service eligibility test on three occasions and passed each time. On two occasions, she was interviewed. However, she has not yet been offered a position. She alleges that defendants did not offer her a job because of her gender.

## II. Discussion

■ The Title VII prohibition on employment discrimination applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (1988). The "[c]urrent or preceding calendar year" referred to are the years current to and preceding the year of the alleged discrimination. *Guadagno*, 932

F.Supp. at 96. In this case, that year was 1995. *See* Matthews Aff.Ex. A.

In support of their motion, defendants argue that only eleven persons were on the payroll in 1994 and 1995. Plaintiff argues that, in addition to these eleven, the Fire District also employed four individuals serving as Treasurer, Secretary, Attorney and Fire Surgeon, five individuals serving on the Board of Commissioners and a number of volunteer firefighters. Defendants counter that the Treasurer, Secretary, Attorney and Fire Surgeon are independent contractors, not employees, and that the other parties, because they are unpaid volunteers, also do not qualify as employees. These arguments are addressed below.

### A. Independent Contractors

■■ The defendants assert that the four parties employed by the Fire District as Treasurer, Secretary, Attorney and Fire Surgeon are independent contractors, not employees. It is established that the scope of the term "employee" as it is used in Title VII, is determined by reference to common law agency principles. *See Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir.1993). Thus, a party which is found to be an "independent contractor," as that term is understood by the common law of agency, is not an "employee" for Title VII purposes. *See O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997).

This Court notes that, because it is undisputed that defendants have only eleven individuals on the payroll, plaintiff must either demonstrate that all four individuals alleged to be independent contractors are in fact employees or else show that the volunteer workers are employees in order to meet the fifteen employee requirement. For the reasons given below, this Court concludes that at least three of the four positions are independent contractors. Plaintiff's Title VII claim must therefore be dismissed unless it is found that either the Commissioners or the volunteer fire-

fighters are properly considered to be employees.

In *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Supreme Court set out a number of factors relevant to the determination of whether a hired party is an employee or an independent contractor under the common law of agency:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.; see also Aymes v. Bonelli*, 980 F.2d 857, 860–61 (2d Cir.1992) (applying *Reid* test); *O'Connor*, 126 F.3d at 115 (applying *Reid* test in Title VII claim). Although no one factor is dispositive, *Aymes v. Bonelli*, 980 F.2d at 861, certain factors should be given more weight in the analysis because they will usually be highly probative of the true nature of the employment relationship. *Id.* These include: (1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects. *Id.*

Defendants present substantial evidence to support their contention that the Treasurer is an independent contractor. Stephanie Bell ("Bell"), who is currently the Treasurer, asserts that her work is not directed by the Fire District and that she determines payroll calculations and other financial obligations of the Fire District on her computer at home. George Williams ("Williams"), who was Treasurer during 1994 and 1995, confirms that this was the practice during that time as well. Williams Aff. ¶ 4. Thus, manner and means of production are not under the control of the employer. The skill required for the position is fairly high.[1] In addition, Bell and Williams state that they are not provided with benefits or support staff. Williams Aff. ¶¶ 4, 5; Bell Aff. ¶¶ 7, 8.

Further, in 1995, the IRS forms issued for the compensation for the Treasurer position were Forms provided for "miscellaneous income," not for wages. *See* Williams Aff. ¶ 4; Bell Aff. ¶ 8, Ex. C.[2] In both 1994 and 1995, Williams was not listed on the payroll. *See* Williams Aff. ¶ 5. The tax treatment was therefore consistent with that of an independent contractor. Thus, of the five critical factors, the first four argue for a finding that the Treasurer is an independent contractor, not an employee. Further, the fifth, the right to assign additional projects, is at best unclear. Although the Treasurer was assigned particular duties (e.g. handling

---

1. Williams describes his duties thus:
 I was responsible for paying all of the bills and financial obligations of the Fire District. In this capacity, I also handled the payroll. To prepare the payroll, the employees reported their hours to me on a bimonthly basis, and I submitted that information to ADP, the payroll company that the District used for those years. I calculated deferred compensation benefits, handled the Credit Union deductions and issued retirement reports for the payroll. Williams Aff. ¶ 2.

2. The documents specifically list the amount paid under the heading, "Nonemployee compensation." Bell Aff.Ex. C.

the payroll) on a continuing basis, there is no indication that the Fire District ever gave the Treasurer additional assignments outside those duties. Finally, at least two of the lesser factors, the source of the tools and the location of the work, provide further support for the conclusion that the Treasurer was an independent contractor: the instrumentalities and tools of the job belonged to the Treasurer, and the location of work was at the Treasurer's home.

Some of the other lesser factors suggest that the Treasurer is an employee. The length of the relationship, at least in the case of Williams, was from 1990 until 1996. *See* Williams Aff. ¶ 1. The method of payment was monthly, which is more consistent with the payment of a regular employee than an independent contractor. Finally, the handling of the payroll was clearly part of the regular business of the hiring party. However, the weight of the factors that favor a finding that the Treasurer was an independent contractor outweigh those suggesting otherwise. Thus, this Court finds that the Treasurer must be considered an independent contractor.

 Although the defendants do not present affidavits from the individuals in the other three positions, Attorney, Fire Surgeon and Secretary, Williams does assert in his affidavit that these positions were, like the Treasurer, not provided with benefits or support staff, and were not directed in their work by the District. Williams ¶ 5. Further, they were paid as independent contractors, and were issued the same IRS Miscellaneous Income form (1099) demonstrating that their compensation was not treated as wages or salary for tax purposes. Finally, the Fire Surgeon and Attorney were highly skilled, and were paid only on an annual basis. At the least, these two positions fall in the independent contractor category.

The Secretary is a somewhat closer question based on the facts provided by the defendants. However, at best, the Secretary brings the total number of employees to only twelve. Thus, to reach the fifteen-employee minimum, Plaintiff must demonstrate that either the Commissioners or the volunteer firefighters, all of whom are alleged by defendants to be unpaid volunteers, should nevertheless be considered employees.

*B. Volunteers*

 The Second Circuit addressed whether an unpaid volunteer could be considered an "employee" under Title VII in *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997). In that case, the court held that remuneration was an "essential condition" of an employment relationship. *Id.* at 116. "Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because, although 'compensation by the putative employee in exchange for his services is not a sufficient condition, ... it is an essential condition to the existence of an employer-employee relationship.'" *O'Connor*, 126 F.3d at 115–16 (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir.1990)). The question of whether a person has received compensation in exchange for services provided, i.e. whether they have been "hired," *id.* at 115, is antecedent to the question of whether she is a hired employee or a hired independent contractor. *Id.* at 115. Thus, "only where a 'hire' has occurred should the common-law agency analysis be undertaken." *Id.* The Court must therefore determine whether either the volunteer firefighters and Commissioners have received "compensation" in exchange for their services.

Plaintiff asserts that the volunteers at the District are employees, relying chiefly on the case, *Haavistola v. Community Fire Co.*, 6 F.3d 211, 219 (4th Cir.1993). In that case, the Fourth Circuit found that, although volunteer firefighters received no wages, they did receive a variety of non-wage benefits that raised a question of fact as to whether they were employees under Title VII. *Id.* at 221. The court then held that the question had to be left to the fact-

finder to resolve, in that case, the jury. *Id.* at 222.

As an initial matter, this Court rejects the conclusion that the question of whether non-salary benefits constitute "compensation" must be presented to the ultimate trier-of-fact. Because the ultimate issue in defendants' motion is jurisdictional, this Court, as noted previously, may resolve underlying questions of fact. 948 F.2d at 96.

However, the case law is less clear on the underlying issue: whether non-wage benefits may be sufficient to establish that a nominal volunteer should nevertheless be considered an employee for purposes of Title VII. In *O'Connor, supra,* the court considered whether a volunteer intern at a state hospital was a Title VII employee, and discussed the holding of *Haavistola.* However, instead of either rejecting or adopting the idea that benefits may be sufficient to make one an employee, the court distinguished *Haavistola* on the grounds that the student intern in its case did not in fact receive any benefits. *See* 126 F.3d at 116 ("Because the absence of either direct *or indirect* economic remuneration or the promise thereof is undisputed in this case, we agree ... that O'Connor was not·a Rockland employee within the meaning of Title VII....") (emphasis added). *O'Connor* cited with approval a district court's finding that a Title VII plaintiff "is only an 'employee if the defendant both pays him and controls his work." *Id.* at 116 (quoting *Tadros v. Coleman,* 717 F.Supp. 996, 1004 (S.D.N.Y. 1989), *aff'd,* 898 F.2d 10 (2d Cir.1990)). With the next breath, however, the Court took pains to note that plaintiff received "no employee benefits such as health in-

surance, vacation, or sick pay, nor was she promised any such compensation." *Id.*

■ *O'Connor* clearly establishes only that a volunteer who receives *no* benefits is not an employee. The defendants allege without dispute that the members of the Board of Fire Commissioners received no benefits. *See* Goldberg Aff.Ex. 3 interrog. 9. Thus, the Commissioners are not employees.

However, *O'Connor* leaves open the possibility that the provision of some form of benefits might be considered "compensation." Defendants concede that volunteer firefighters working for the District in 1994 and 1995 were entitled to certain benefits. Therefore, *O'Connor* does not clearly resolve whether these individuals may be considered employees.

Further, and contrary to the defendants' assertion, the recent Supreme Court case *Walters v. Metropolitan Educational Enterprises,* 519 U.S. 202, 213, 117 S.Ct. 660, 666, 136 L.Ed.2d 644 (1997) does not resolve the issue. That case held that whether a person is an "employee" on a particular day is determined not by whether they are physically working on that day but by whether they "ha[ve] an employment relationship with the individual on the day in question." *Id.,* 519 U.S. at 205, 117 S.Ct. at 663. They stated that "[t]his test is generally called 'the payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* However, they also found that appearance on the payroll is not always determinative; the "ultimate touchstone under § 2000e(b) is whether an employer has [an] employment relationship[ ] with" the individual in question. *Id.,* 519 U.S. at 213, 117 S.Ct. at 666.[3] Thus, *Walters* does

---

**3.** When the Supreme Court stated that appearance on the payroll was not the ultimate question, it was to affirm that even the appearance on an employer's payroll did not always demonstrate an employment relationship. 519 U.S. at 213, 117 S.Ct. at 666. It is therefore not clear whether the Court also meant the reverse: that non-appearance on

the payroll was not sufficient to bar a finding of an employment relationship. However, in stating that the employment relationship was "most readily demonstrated" by appearance on the payroll, the Court did not hold that other evidence, such as non-salary benefits, could not also demonstrate such a relation-

not establish that only a wage or salary will establish an "employment relationship," although the Court's emphasis on the payroll as indicator is certainly suggestive.

Cases outside the Second Circuit are similarly inconclusive. Other courts considering plaintiffs who were not paid a wage or salary, while unanimously finding that the plaintiff was not an employee, appear to have left open the possibility that some instance of benefits might be sufficient to establish an employment relationship. *See, e.g., Kemether v. Pennsylvania Interscholastic Athletic Assoc., Inc.,* 15 F.Supp.2d 740, 768 (E.D.Pa. 1998) (finding *Haavistola* inapplicable because of absence of any evidence that plaintiff's services were rendered in return for benefits); *Neff v. Civil Air Patrol,* 916 F.Supp. 710, 713–14 (S.D.Ohio 1996) (analyzing the specific kinds of non-wage compensation provided to plaintiff and finding that they were insufficient to establish employment relationship, but suggesting that "benefits which create career opportunities" might be sufficient); *Tadros v. Coleman,* 717 F.Supp. 996, 1005 (S.D.N.Y.1989) (finding that plaintiff was employee where defendant gave him "no pecuniary *or other benefits*" (emphasis added)), *aff'd,* 898 F.2d 10 (2d Cir.1990). *But see Smith v. Berks Community Television,* 657 F.Supp. 794, 796 (E.D.Pa.1987) (concluding that "unpaid volunteers are not employees within the meaning of" Title VII).

Given that some form of benefits may constitute compensation, this Court must consider what type of benefits is sufficient. The court in *O'Connor* indicated that compensation must be "financial," *id.,* 126 F.3d at 115, and must be provided "in exchange for [the worker's] services...." However, it also suggested that economic remuneration could be "direct or indirect" and that benefits with economic value such as "health insurance, vacation or sick pay" could constitute "compensation." *Id.* (finding that plaintiff was not provided with the

listed benefits, "nor was she promised any such compensation.").

A further indication is provided by *Graves,* which did not limit what may be compensation to wages, but did see wages or salary as an exemplar of what is considered compensation. *See id.,* 907 F.2d at 73 ("an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services....").

■ Although not expressly noted by any of the courts, an aspect of wages or salary which runs through the benefits referenced by the Second Circuit is that the benefit is guaranteed in exchange for the service provided. This Court concludes that, absent a guarantee of direct or indirect financial consideration for the work provided, an individual cannot be considered to be "hired."

■ According to the defendants, the only benefit provided to volunteer firefighters in 1994 and 1995 was participation in the District's Service Award Program. Goldberg Aff.Ex. 3 at interrog. 9. Service Award Programs, defined in N.Y.Gen.Mun. Law § 214, et seq. (McKinney Supp. 1999), are programs under which volunteer firefighters who have provided sufficient service become entitled to receive a financial benefit upon reaching "entitlement age," required to be set at no earlier than 55 years of age. N.Y.Gen.Mun.Law § 215(a) (McKinney Supp.1999).

The ultimate amount of the benefit received is dependant on the number of years of service credited. *Id.,* §§ 218(b), 219(b). In turn, a volunteer firefighter must complete a certain amount of service within a year to be credited for that year under the Service Award Program. *Id.,* § 217(c). The amount of service is defined by a point system; various tasks are assigned a certain number of points, and a volunteer must accumulate fifty points to be credited for service in that year. *Id.*

ship. In sum, the *Walters* decision could be interpreted as requiring a salary, or not.

The service awards thus do not provide a guarantee of consideration for the work performed. A volunteer firefighter may work for twenty years and receive nothing in compensation if they do not earn the requisite number of points in any particular year. Further, a volunteer who works for less than a certain number of years (presumptively set at 5), *id.*, § 217(b), forfeits his or her right to any benefit. Therefore, the service awards do not constitute the sort of guaranteed "remuneration" which establishes an "employer-employee" relationship.

■ Even were the Service Award benefit a guarantee of compensation in exchange for the service provided, this Court believes that it would still not constitute "compensation" because it is not provided in a contemporaneous fashion. In analyzing whether an individual is an employee or an independent contractor, the Second Circuit has noted that "[i]n appropriate circumstances, factors relating to an individual's economic dependence upon the hiring party may be taken into account...." *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir.1993). Although, as noted above, the immediate issue is not a question of the character of the hiring relationship but rather whether there is a hiring relationship at all, nevertheless, the issue of economic dependence would still seem to be logically relevant to answer the question of what benefits constitute "compensation" since it is generally the compensation provided in the job on which an employee may be economically dependant. *But see* Craig J. Ortner, *Adapting Title VII to Modern Employment Realities: The Case for the Unpaid Intern,* 66 Fordham L.Rev. 2613 (May 1998) (arguing that economic dependance may result from the reliance on a volunteer position to create subsequent job opportunities).

If a financial benefit or a benefit with significant financial value (e.g. general medical insurance) is received in an ongoing, roughly contemporaneous fashion, then an individual might well depend upon it, supporting a finding that they are in an employment relationship. However, if the benefit is received only after many years of services, then any concurrent dependance is absent. At best, one might argue that a promise of a retirement benefit frees up funds from other sources of contemporaneous income which the worker might otherwise feel compelled to save for retirement. However, such a hypothetical contemporaneous benefit is too speculative and limited to suggest any real economic dependence.

The Service Awards do not provide any benefit until a person reaches "entitlement age," which may be set no earlier than fifty-five, *see* N.Y.Gen.Mun.Law § 215(4) (McKinney Supp.1999) and thus will result in little or no economic dependance by most volunteer firefighters. For this reason, and because that benefit is not a guarantee of compensation for work performed, this Court finds that it cannot be considered "compensation."

■ Thus, the volunteer firefighters cannot be considered employees under Title VII as a matter of law and the Fire District therefore lacked the requisite fifteen employees during the years 1994 and 1995.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss the Title VII claim pursuant to Fed.R.Civ.P. 12(b)(1) is GRANTED; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.