**Teresa M. EVANS, Plaintiff**

v.

**Thomas WILKINSON, et al., Defendants.**

**Civil Case No. RWT 08–1176.**

United States District Court, D. Maryland.

March 23, 2009.

Teresa M. Evans, Piney Point, MD, pro se.

Bryan T. Dugan, Dugan McKissick Wood and Longmore LLC, Lexington Park, MD, Elizabeth Ann Frey, Donnelly and Associates PC, Conshohocken, PA, Matthew Douglas Peter, Law Office of Matthew D. Peter, Hanover, MD, for Defendants.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

On May 7, 2008, Plaintiff Teresa Evans filed this action *pro se* alleging employment discrimination on the basis of gender and age in violation of Title VII of the Civil Rights Act of 1964 [1] ("Title VII") and the Age Discrimination in Employment Act of 1967 [2] ("ADEA"). Plaintiff contends that Defendants Dr. Thomas Wilkinson, Eva Snyder Jones, Lexington Park Volunteer Rescue Squad, Inc. ("Volunteer Rescue Squad"), and St. Mary's County Emergency Management Division ("Emergency Management Division") discriminated against her when they revoked her privileges as a paramedic and driver in St. Mary's County because of her gender and age and that they subsequently retaliated against her when she filed charges based that conduct with the Maryland Commission on Human Rights ("MCHR"). Defendants Wilkinson, Jones, and the Volunteer Rescue Squad moved to dismiss the Complaint on July 3, 2008. The Emergency Management Division filed its motion for dismissal or, in the alternative, for summary judgment on August 8, 2008.

### I.

Plaintiff is a licensed emergency medical technician ("EMT"). Compl. at 2. Plaintiff became a EMT–Basic with the Volunteer Rescue Squad in 2002. *Id.* In March 2006,

1. 42 U.S.C. §§ 2000e, *et seq.* (2006).

2. 29 U.S.C. §§ 621, *et seq.* (2006).

Plaintiff's privileges to serve as an EMT–Basic and to drive Emergency Service Vehicles were revoked in St. Mary's County based upon two violations of the Volunteer Rescue Squad Standard Operating Procedure. *Id.* at 5. In order to be reinstated, Plaintiff was required to draft a scholarly paper on patient rights and teamwork and to serve as an EMT–Basic with a squad-appointed preceptor for three months. *Id.* In December 2006, Plaintiff submitted her paper and alleged that she had completed her three months of precepted runs; she was then reinstated as an EMT–Basic in St. Mary's County without restriction, and a letter of censure was placed in her permanent file. *Id.* at 6.

In response to the Defendants' actions, Plaintiff filed a charge of discrimination with the MCHR on February 6, 2007. *See* Compl. Exs. 1 & 2. On July 18, 2007, Plaintiff's privilege to serve as a EMT–Basic was revoked, which is its current status. Compl. at 7. The MCHR found that "there is no [p]robable [c]ause to believe that the [Plaintiff] has been discriminated against on the bases of age and sex." Def. Emergency Mgmt. Div. Mot. Dismiss or, Alternatively, Mot. Summ J., Ex. 2 (MCHR Written Finding) at 4. The Equal Employment Opportunity Commission adopted the MCHR's findings of fact and issued Plaintiff her right to sue letter on February 8, 2008. *See* Compl. Ex. 3. Plaintiff then filed her complaint in this Court on May 7, 2008.

## II.

■ A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562–63, 127 S.Ct. 1955, 1969,

167 L.Ed.2d 929 (2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[3] The Court in *Twombly* looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," 127 S.Ct. at 1974, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." 127 S.Ct. at 1964–65. In sum, "factual allegations must be enough to raise a right to relief above a speculative level." 127 S.Ct. at 1965.

The Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson County,* 407 F.3d 266, 268 (4th Cir.2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche,* 293 F.3d 726 (4th Cir.2002). If "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R.Civ.P. 12(d). Here, the Court has considered extensive materials outside of the pleadings submitted by both parties. Ac-

**3.** *Conley* stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

cordingly, the Court will treat the Defendants' motions as being ones for summary judgment. Fed.R.Civ.P. 12(d).

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir.2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126,

1128 (4th Cir.1987) (citing *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added).

### III.

■ Plaintiff's Compliant alleges gender and age discrimination against Defendants Wilkinson, Jones, the Volunteer Rescue Squad, and the Emergency Management Division.[4] Plaintiffs' bare allegations, without more, regarding the involvement of Defendants Wilkinson, Jones, and the Emergency Management Division in the purported discriminatory and retaliatory conduct against her are attenuated at best. Plaintiff appears to be alleging that Wilkinson's role in appointing Jones to an Investigative Committee regarding Plaintiff's conduct and Jones's role in recording two Standard Operating Procedure violations, based upon reports furnished to her, suffice to subject them to liability as employers in the absence of any evidence supporting any form of employment relationship. *See* Compl. at 3–8. She does not allege that she was employed by the Emergency Management Division. She does allege, however, that she was employed by the Volunteer Rescue Squad.

■ The unrebutted evidence before the Court is that the Emergency Management Division is not a "joint employer"[5] with the Volunteer Rescue Squad as it does not

---

4. The Emergency Management Division is not a separate entity, but rather is a division of the Department of Public Safety of St. Mary's Country, Maryland. Dr. Wilkinson is a volunteer serving as the Emergency Medical Services Medical Director for the Emergency Management Division, and Eva Snyder–Jones is a volunteer with the Volunteer Rescue Squad.

5. An entity that is not the direct employer may be still be liable under Title VII and the ADEA as a "joint employer" if it controls "some aspect of the individual's compensation, terms, conditions, or privileges of the plaintiff's employment." *See Takacs v. Fiore*, 473 F.Supp.2d 647, 655 (D.Md.2007). For the reasons discussed above in the main text, which Plaintiff has not rebutted with anything more than her conclusory allegations, the

participate or supervise the employment decisions, policies, protocol, or procedures, or the operations of Volunteer Rescue Squad, which is a separate private entity, nor does the Emergency Management Division provide any form of leave, benefits, or workers' compensation insurance to employees or volunteers of the Volunteer Rescue Squad. Def. Emergency Mgmt. Div. Mot. Dismiss or, Alternatively, Mot. Summ J., Ex. 4 (Sabo Aff.) at ¶¶ 5–7. Plaintiff has never worked for the Emergency Management Division and has never been an employee of St. Mary's County. *Id.* ¶ 7. Finally, the Emergency Management Division, as a division of the Department of Public Safety in the Executive Branch of St. Mary's County Government, does not exist as a separate legal entity from St. Mary's County and thus is not a proper party to Plaintiff's lawsuit. *See Hines v. French,* 157 Md.App. 536, 573, 852 A.2d 1047 (2004) (holding that the Baltimore County Police Department was an agent of the State and dismissing it as a separate defendant). The Court finds, based upon the unrebutted evidence in the record before it, that Plaintiff was not engaged in *any* form of an employment relationship—much less one that would subject her to the protections under Title VII and the ADEA—with Defendants Wilkinson, Jones, and the Emergency Management Division.

As to the Volunteer Rescue Squad, the Court must determine whether Plaintiff is a covered "employee" under both Title VII and the ADEA. Section 4(a)(1) of the ADEA provides that

It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). The Fourth Circuit has held that a "plain reading of the ADEA indicates that an 'individual' only has a cause of action under this provision if he or she is an 'employee' at the time of his termination." *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir. 1983) (citations omitted). Similarly, Title VII protects "employees" against gender discrimination *inter alia. See id.* at 981 n. 4 (noting that the "operative language" of the ADEA and Title VII was identical and that the term "individual" has been interpreted to refer to "employees").

Both the ADEA and Title VII define "employee," rather unhelpfully, as "an individual employed by an employer." 29 U.S.C. § 630(f) (ADEA); 42 U.S.C. § 2000e(f) (Title VII). The Fourth Circuit has adopted the approach of "analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." *Garrett,* 721 F.2d at 981. The common law test primarily [6] considers the

---

Emergency Management Division does not control any aspect of her compensation, terms, conditions, or privileges of her employment. Plaintiff's contention that the revocation of her license by the State of Maryland indicates its status as her employer is misplaced. The State's oversight of individuals who provide emergency medical services under Md.Code Ann., Educ. § 13–516 does not transform it into the employer of Plaintiff; to hold otherwise would lead to the absurd holding that the State is the employer for every

profession in which a license to practice in Maryland is required.

6. Other factors that derive from the federal common law of agency are:

the hiring party's right to control the manner and means by which the product is accomplished[;] the skill required; the sources of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired part;

importance of the employer's control over the employee. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir.1982). But in *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), the Supreme Court held that the common law "right to control" test was too rigid, and instead adopted a totality of the circumstances approach, in which the lower courts should consider whether the individual is "as a matter of economic reality ... dependent upon the business to which they render service." *Id.* "Compensation is of course of paramount importance to such an inquiry." *Tawes v. Frankford Volunteer Fire Co.*, No. Civ.A.03–842–KAJ, 2005 WL 83784, at *4 (D.Del. Jan. 13, 2005) (citing *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir.1997) (holding that remuneration is an "essential condition" of employment, and a volunteer, who did not receive compensation, was not an "employee" under Title VII)). Furthermore, the "manner in which the parties view the relationship is some evidence as to whether the [individual] in any particular case will be deemed an 'employee.'" *O'Connor*, 126 F.3d at 116.

■ It is undisputed that Plaintiff was a volunteer EMT with the Volunteer Rescue Squad. However, Plaintiff acknowledges in her Complaint that she "managed to hold down [her] paid employment" as an EMT with the Department of Defense in addition to her volunteer service with the Lexington Park Volunteer Rescue Squad and "three different volunteer rescue squads." Compl. at 3. Though she concedes that she did not receive a salary, Plaintiff contends that the availability of certain benefits to volunteer EMTs satisfies the required condition that the "economic reality" was that she was dependent upon those benefits. It is undisputed that Plaintiff was eligible upon meeting certain conditions to receive certain benefits as a result of volunteering with the Lexington Park Volunteer Rescue Squad: (1) a Length of Service program; (2) a first-time homeowner's assistance program; and (3) a scholarship program. Pl.'s Opp. to Def. Emergency Mgmt. Div. Mot. Dismiss or, Alternatively, Mot. Summ J. at 5–7.

The question the Court must resolve is whether those benefits transform Plaintiff's volunteer relationship with the Lexington Park Volunteer Rescue Squad into an employer-employee relationship. The Court is required to then look at the parties' relationship, focusing upon the "economic reality" and how the parties viewed their relationship.

First, what Plaintiff refers to as a "retirement" program and "worker's compensation insurance" program is something quite different. Rather, there is a "Length of Service Program," and it provides that volunteers who have reached the ages of 55 or 60, completed *at least 20 years* of "certified active volunteer service," and have accumulated a minimum of 50 points per calendar year as provided for in the point award system, will receive a monthly payment of either $125 or $175 for the remainder of his or her life. St. Mary's County, Md., Code § 181–1 to –5 (2009). This program provides for certain monetary payments if the volunteer, who is otherwise eligible for the monthly payments, is disabled or dies during the course of her volunteer service or if the

---

the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hired party is in business; the provision of employee benefits; and the tax treatment of the hired party.
*Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–51, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

volunteer dies prior to or while receiving these payments. *Id.* § 181–3. It is significant to note that monthly payments under this Length of Service Program are not guaranteed by any means; Plaintiff herself would be required to render a minimum of 20 years of additional "certified active volunteer service" in addition to accumulating a minimum of the 50 required points per calendar points in accordance with the program's description. *See id.* § 181–3, –5.

This program is almost identical to the one considered by the United States District Court for the Northern District of New York in *Keller v. Niskayuna Consol. Fire District,* 51 F.Supp.2d 223, 231 (N.D.N.Y.1999). There, the district court found that it lacked jurisdiction over the plaintiff-volunteer firefighter's Title VII claims because the length of service program did not "constitute the sort of guaranteed 'remuneration' which establishe[d] an 'employer-employee' relationship." *Id.* at 232. In reaching this conclusion, the district court relied upon the fact that the service awards, which were conditioned upon the volunteer reaching 55, completing at least 5 years of service, and accumulating 50 points per year. *Id.* at 231 (citing N.Y. Gen. Mun. Law. §§ 215(a), 217(b)-(c), 218(b), 219(b) (McKinney Supp.1999)). Therefore, "[t]he service awards thus d[id] not provide a guarantee of consideration for the work performed" as it was not "provided in a contemporaneous fashion," which resulted in "little or no economic dependence by most volunteer firefighters" because one could forfeit the benefit by failing to reach the threshold age, completing the requisite number of years in service or earning the requisite number of

points per year. *Keller,* 51 F.Supp.2d at 232.

Here, the Length of Service benefit is predicated upon Plaintiff reaching the age of 55 or 60, completing at least 20 years of "certified active volunteer service" (which is four times as long as in *Keller* ) and accumulating a minimum of 50 points per calendar year as provided for in the point award system to qualify for a monthly payment of either $125 or $175 for the remainder of her life. Upon satisfying these conditions, at age 71 at the earliest,[7] Plaintiff would receive a maximum annual benefit of $2,100.00. The attenuated temporal nexus between the work performed and the benefit received supports a finding, like in *Keller,* that the Length of Service program here is not a guarantee for the work performed (due to the multiple preconditions) and thus "result[s] in little or no economic dependance by most volunteer [EMTs]." *Keller,* 51 F.Supp.2d at 232. Moreover, Plaintiff has not rebutted the inference that this benefit (if and when she qualifies for it) is too minor, when viewed in the context of remuneration ordinarily associated with employment. *See Felty,* 818 F.2d at 1128 (holding that the Court may rely only upon the facts supported in the record, not Plaintiff's assertions in the pleadings); *see also Tawes,* 2005 WL 83784, at *5 (finding that volunteer fireman's eligibility to receive a $60 annual benefit, which was predicated upon 40 hours of work, from the Frankford Volunteer Fire Company was too minor to qualify as a remuneration). This is further supported by the unrebutted fact that Plaintiff maintained paid employment with the Department of Defense, which provided her with a source of guaranteed

---

**7.** Plaintiff averred in her Complaint that she was 51 when she began volunteering as an EMT–Basic with the Lexington Park Volunteer Rescue Squad. Compl. at 2. Therefore, assuming Plaintiff was able to complete the required 50 points during the relevant calendar years, the earliest she would complete her 20 years of service would the year of her 71st birthday.

income, upon which she was financially dependent. *See* Compl. at 6. Therefore, the Length of Service Program cannot be considered "compensation" for the purposes of supporting a finding that Plaintiff is an "employee" under Title VII and the ADEA.

Second, the first-time homeowner's assistance program, which provides eligible [8] St. Mary's County employees or volunteers, with up to $12,500 toward the purchase of their *first home*, also cannot be considered "compensation" for the work provided. Maryland Mortgage Program— House Keys 4 St. Mary's County Program, http://www.mmprogram.com/Info4 Borrower.aspx (last visited Mar. 18, 2009). Plaintiff has not adduced any evidence that she would qualify for this program [9] nor has she rebutted the inference that this benefit (if she were qualified for it) is too minor for her to be financially dependent upon it. *See Keller*, 51 F.Supp.2d at 232.

Third, the St. Mary's County Scholarship Program for the 2008–09 school year provides that Volunteer Rescue Squad volunteers who satisfy the Length of Service Program requirements for the previous year are eligible to apply for—but are not guaranteed—a scholarship. Pl.'s Opp. to Def. Emergency Mgmt. Div. Mot. Dismiss or, Alternatively, Mot. Summ J., Ex. 8 ("St. Mary's County Fire/EMS Scholarship Program Year 2008–2009") at 2. The scholarship recipients are selected from the pool of applicants and are renewable at the discretion of St. Mary's County and thus are not guaranteed forms of compensation such that Plaintiff would be financially dependent on it. *See Keller*, 51 F.Supp.2d at 232. Once again Plaintiff has failed to adduce anything more than her bare allegations in support of her contention that this benefit transforms her to an "employee" protected under Title VII and ADEA; this does not suffice for purposes of defeating a motion for summary judgment.

Finally, the leading Fourth Circuit on this issue, *Haavistola v. Cmty. Fire Co.*, 6 F.3d 211, 221–22 (4th Cir.1993), is factually distinguishable from the case presently before this Court. The *Haavistola* Court held that where a volunteer firefighter received "indirect but significant remuneration" in the form of, *inter alia*, a disability pension, survivors' benefits, group life insurance, scholarships for the volunteer's dependents upon his death, workers' compensation benefits, and tax-exemptions for work-related travel, a reasonable factfinder could decide that an employment relationship under Title VII existed between the volunteer firefighter and her fire company. *Id.* In contrast, in this case, the Plaintiff has not adduced evidence that she actually *received* any of the benefits—or was even eligible for—those benefits upon which the subject matter jurisdiction of this Court may be premised. Unlike the *Haavistola* case, there are *no* facts before

---

8. The House Keys 4 Employees Program requires that a "Fire, Rescue, or Advanced Life Support (ALS) volunteer ... qualif[y] in the prior year for credited service, as defined for purposes for the Length of Service Awards," be eligible to receive a Maryland Mortgage Program (MMP) loan, and be able to repay the County financial contribution in the event she leaves the eligible employment within five years or does not meet the service requirement for two consecutive years as a volunteer. Maryland Mortgage Program—House Keys 4 St. Mary's County Program, http://www. mmprogram.com/Info4Borrower.aspx.

9. Plaintiff is likely not eligible for this program. Accordingly to publicly available records of the Maryland State Department of Assessments and Taxation (which is attached to this order), Plaintiff and her husband are the tenants-by-the-entirety of the residence, which Plaintiff has listed as her address, located at 16451 Ball Point Road, Piney Point, Maryland, 20674. *See* Maryland Department of Assessments, St. Mary's County Real Property Data Search, http:///sdatcert3.resiusa. org/_rewrite/details.aspx?County=19 & SearchType=STREET & AccountNumber=09000534 (last visited Mar. 20, 2009).

the Court supporting its exercise of federal question jurisdiction under Title VII or the ADEA upon. Rather the facts that are in the record before the Court, which Plaintiff has not rebutted, demonstrate that Plaintiff was not paid a salary or even on the payroll; did not receive annual or sick leave, medical benefits, or a retirement plan; and was not covered by St. Mary's County workers' compensation insurance. Def. Emergency Mgmt. Div. Mot. Dismiss or, Alternatively, Mot. Summ J., Ex. 4 (Sabo Aff.) at ¶¶ 6–7.

Because the ultimate issue in Defendants' motion is jurisdictional, this Court may resolve underlying questions of fact. *See* Fed.R.Civ.P. 12(b)(1)1 (Plaintiff bears the burden of proving that subject matter jurisdiction exists); *Felty,* 818 F.2d at 1128 (holding that the Court must prevent factually unsupported claims from proceeding to trial). Accordingly, applying these legal principles to the facts in the record before the Court on summary judgment, the Court concludes that Plaintiff was not an "employee" under Title VII or the ADEA because, viewing the entire factual situation, the "economic reality" is that Plaintiff was not dependent upon the Volunteer Rescue Squad, to which she rendered volunteered EMT–Basic service. *See Bartels,* 332 U.S. at 130, 67 S.Ct. 1547. Accordingly, this Court lacks subject matter jurisdiction over this case. *See Garrett,* 721 F.2d at 981 (requiring that an individual qualify as an "employee" in order to state a claim under Title VII and the ADEA).

Even assuming *arguendo* that Plaintiff's claims against all the Defendants were properly raised under both Title VII and the ADEA (i.e. the Plaintiff qualified as an "employee"), summary judgment would still be appropriate because portions of Plaintiff's claims are time-barred and Plaintiff has also failed to meet her burden of opposing summary judgment.

First, Plaintiff was required to file a charge of discrimination within 300 days of the alleged violative conduct. 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 2000e–5(e)(1) (Title VII). This 300–day period acts as a statute of limitations such that claims are filed after it are time-barred. *Flickinger v. E.I. Du Pont De Nemours & Co.,* 466 F.Supp.2d 701, 707 (D.Md.2006) (ADEA); *Ashton v. Okosun,* 266 F.Supp.2d 399, 403 (D.Md.2003) (Title VII). Here, Plaintiff's Complaint includes allegations of discrimination from 2005 to 2007. *See* Compl. at 1–7. Because Plaintiff filed her charge of discrimination with the MCHR on February 6, 2007, the Court may consider only those alleged acts of discrimination that occurred after April 12, 2006 as the acts occurring before that date are time-barred. *See* Compl. Exs. 1 & 2.

Second, even viewing all of the evidence in the light most favorable to Plaintiff, she has failed to meet her burden in opposing Defendants' motions for summary judgment. She cannot, as she has done, rely on her unsubstantiated allegations in her Complaint and Oppositions. Plaintiff must adduce evidence that either (1) supports the entry of summary judgment in her favor; or (2) creates a genuine issue of material fact such that summary judgment is an inappropriate vehicle for the resolution of these claims. *See* Fed.R.Civ.P. 56(e)(2) ("An opposing may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."). Plaintiff has done neither; Plaintiff has failed to submit any affidavits whatsoever in support of her allegations. Moreover, Plaintiff has also failed to submit an affidavit as to why the Court should order a continuance to enable her to obtain affidavits, take depositions, or undertake any other form of discovery that would provide essential facts to her opposition. Fed.R.Civ.P. 56(f). The Court

is constrained to rely on those facts that are supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty*, 818 F.2d at 1128.

## IV.

For the foregoing reasons, the Court will, by separate order, grant the Defendants' Motion for Summary Judgment, and direct the entry of judgment for costs in favor of all Defendants.

### *ORDER*

ROGER W. TITUS, District Judge.

Upon consideration of the Defendants Thomas Wilkinson, Eva Snyder Jones, and Lexington Park Volunteer Rescue Squad's Motion to Dismiss [Paper No. 6], Defendant St. Mary's County Emergency Management Division's Motion to Dismiss or, in the Alternative, for Summary Judgment [Paper No. 12], and the Plaintiff's Oppositions thereto, it is this 23rd day of March, 2009, by the United States District Court for the District of Maryland,

**ORDERED** that Defendants Thomas Wilkinson, Eva Snyder Jones, and Lexington Park Volunteer Rescue Squad's Motion to Dismiss [Paper No. 6] is **GRANTED;** and it is further

**ORDERED** that Defendant St. Mary's County Emergency Management Division's Motion to Dismiss or, in the Alternative, for Summary Judgment [Paper No. 12] is **GRANTED;** and it is further

**ORDERED** that the Complaint [Paper No. 1] is **DISMISSED;** and it is further

**ORDERED** that judgment for costs is **ENTERED** in favor of all Defendants; and it is further

**ORDERED** that the Clerk of the Court is directed to **CLOSE** the case.

| | |
|---|---|
| **Maryland Department of Assessments and Taxation** | Go Back |
| **ST. MARY'S COUNTY** | View Map |
| **Real Property Data Search** (2007 vw2.3) | New Search |

**Account Identifier:** District - 09 Account Number - 000534

### Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | EVANS, MICHAEL F & TERESA M T/E | Use: | MARSH LAND |
| | | Principal Residence: | YES |
| Mailing Address: | PO BOX 193 PINEY POINT MD 20674-0193 | Deed Reference: | 1) DBK/ 240/ 119 2) DBK/ 236/ 775 |

### Location & Structure Information

| Premises Address | Legal Description |
|---|---|
| 16451 BALL POINT RD | 2.3806 ACRES |
| PINEY POINT 20674 | N/E MD RT 249 |
| WATERFRONT | ST GEORGE'S ISLAND |

| Map | Grid | Parcel | Sub District | Subdivision | Section | Block | Lot | Assessment Area | Plat No: |
|---|---|---|---|---|---|---|---|---|---|
| 69 | 9 | 136 | | | | | | 2 | Plat Ref: |

| | Town | |
|---|---|---|
| Special Tax Areas | Ad Valorem | FIRE DISTRICT 9 |
| | Tax Class | |

| Primary Structure Built | Enclosed Area | Property Land Area | County Use |
|---|---|---|---|
| 1920 | 1,442 SF | 2.38 AC | |

| Stories | Basement | Type | Exterior |
|---|---|---|---|
| 1 1/2 | NO | STANDARD UNIT | FRAME |

### Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As Of 01/01/2008 | As Of 07/01/2008 | As Of 07/01/2009 |
| Land | 120,050 | 232,550 | | |
| Improvements: | 64,300 | 71,560 | | |
| Total: | 184,350 | 304,110 | 519,906 | 264,190 |
| Preferential Land: | 0 | 0 | 0 | 0 |

### Transfer Information

| | | |
|---|---|---|
| Seller: | Date: | Price: |
| Type: | Deed1: | Deed2: |
| Seller: | Date: | Price: |
| Type: | Deed1: | Deed2: |
| Seller: | Date: | Price: |
| Type: | Deed1: | Deed2: |

### Exemption Information

| Partial Exempt Assessments | Class | 07/01/2008 | 07/01/2009 |
|---|---|---|---|
| County | 000 | 0 | 0 |
| State | 000 | 0 | 0 |
| Municipal | 000 | 0 | 0 |

| | |
|---|---|
| Tax Exempt: NO | Special Tax Recapture: |
| Exempt Class: | * NONE * |