JULIA SMITH GIBBONS, Circuit
Judge, concurring in part and dissenting in part.
I agree with the majority that a remand is necessary because, on the factual record of this case, the question of remuneration cannot be decided as a matter of law. However, I disagree with the majority’s conclusion that, when evaluating whether an individual is an “employee” for purposes of Title VII of the Civil Rights Act of 1964 (“Title VII”), the court must weigh remuneration as merely one factor under the common-law agency test set forth in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), and in Community for Creative Nom-Violence v. Reid, 490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). I would instead adopt the two-step inquiry applied by several of our sister circuits and by the district court, requiring the putative employee to make a threshold showing of remuneration before analyzing the putative employment relationship under the common-law agency test.
As the majority correctly observes, this case presents our first occasion to address the scope of the term “employee” as it applies in the volunteer context. But several cases from our sister circuits have considered this issue, and their analysis is instructive. Foremost, in evaluating whether a volunteer firefighter is an “employee” of the fire department for the purpose of Title VII protection, both the Fourth and Second Circuits have required a threshold showing of significant remuneration or job-related benefits. In Haavistola v. Community Fire Co., the Fourth Circuit held that where a volunteer firefighter had received “indirect but significant remuneration” through benefits including a disability pension, group life insurance, survivors’ benefits, tax exemptions for unreimbursed travel expenses, and scholarships for dependents upon death, a reasonable fact-finder could conclude that an employment relationship existed under Title VII between the firefighter and her department. 6 F.3d 211, 221-22 (4th Cir.1993) (noting that “[t]he district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration ... or inconsequential incidents of an otherwise gratuitous relationship”). Although Haavistola contended that control — not remuneration — was the “essential element” in defining an “employee,” the Fourth Circuit disagreed, commenting that “[cjontrol loses some of its significance in the determination [of] whether an individual is an employee in those situations in which compensation is not evident.” Id. at 220-21. The Second Circuit, citing Haavistola with approval, likewise stated that “the question of whether someone is or is not an employee under Title VII usually turns on whether ... she has received direct or indirect remuneration from the alleged employer” and that “a non-salaried volunteer firefighter’s employment status under Title VII is a fact question when that firefighter is entitled to significant benefits.” Pietras v. Bd. of Fire Comm’rs of the Farmingville Fire Dist., 180 F.3d *357 468, 473 (2d Cir.1999) (internal quotation marks omitted).
Similarly, in Graves v. Women’s Professional Rodeo Association, Inc., the Eighth Circuit considered whether the membership roster of the Women’s Professional Rodeo Association (‘WPRA”), a non-profit corporation organized for the purpose of sanctioning rodeo barrel races, could be construed as a list of its employees. 907 F.2d 71, 72 (8th Cir.1990). Although WPRA did not compensate members directly or indirectly, certain benefits inured from membership: namely, WPRA offered advances on rodeo fees and the opportunity for annual recognition as the World Champion Barrel Racer. Id. Graves, a male rodeo contestant who was denied membership, filed suit against WPRA, alleging a claim for gender discrimination under Title VII. Id. at 71. Although Graves argued that WPRA’s control over its membership approximated an employment relationship, the Eighth Circuit rejected this argument:
For most members, belonging to WPRA and competing on the professional rodeo circuit is not a remunerative proposition. The relationship between WPRA and its members simply bears no resemblance to that between an employer and employee within the accepted usage of those terms: no compensation is made, only prize money won — and that is not supplied by the alleged employer nor does the recipient necessarily come from the postulated class of employees.... Only by skipping this crucial and elementary initial inquiry — whether there exists an employment relationship, according to the ordinary meaning of the words — and jumping straight into verbal manipulation of the case law ... can Graves make an implausible argument sound even marginally plausible.
Id. at 73. The Eighth Circuit further noted that the legislative history of the Civil Rights Act “explicitly provide[d] that the dictionary definition should govern the interpretation of ‘employer’ under Title VII” and that “[cjompensation by the putative employer to the putative employee in exchange for his services ... is an essential condition to the existence of an employer-employee relationship.”[1] Id. (stating that “employee” means “one employed by another usu. in a position below the executive level and usu. for wages” (quoting Webster’s Third New Int’l Dictionary 743 (unabridged) (1981))). Thus, Haavistola, Pietras, and Graves make clear that, in evaluating whether a volunteer is an “employee” under Title VII, several of our sister circuits have required plaintiffs to make a threshold showing of “indirect but significant remuneration,” Haavistola, 6 F.3d at 222, or “significant benefits,” Pietras, 180 F.3d at 473.
The majority, however, states that we cannot require a showing of remuneration as an antecedent inquiry, independent of the common-law agency test, because “employee-employer relationships can be complex and may not fit neatly into one particular categorization.” (Majority Op. at 355.) But, courts have applied this two-step test in a variety of factual circum *358 stances, notwithstanding that the putative employment relationship is “complex.” For example, in United States v. City of New York, the Second Circuit held that the district court erred by finding as a matter of law that four welfare recipients who participated in New York City’s Work Experience Program, a mandatory welfare work program, were not “employees” within the meaning of Title VII and thus were not entitled to Title VII’s protections. 359 F.3d 83, 87 (2d Cir.2004). In determining whether an individual was an employee for Title VII purposes, the court applied a two-part test:
First, the plaintiff must show she was hired by the putative employer. To prove that she was hired, she must establish that she received remuneration in some -form from her work. This remuneration need not be a salary, but must consist of substantial benefits not merely incidental to the activity performed. Once plaintiff furnishes proof that her putative employer remunerated her for services she performed, we look to the thirteen factors articulated by the Supreme Court in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) to determine whether an employment relationship exists.
Id. at 91-92 (internal citations and quotation marks omitted). On the facts of the case, the court held that “the relationship alleged here — which includes cash payment, the related benefits, and the requirement that the plaintiffs’ work be useful — if proved, establishes the plaintiffs as employees for the purposes of Title VII.” Id. at 97.
The Tenth Circuit also has required a showing of remuneration in evaluating whether a medical student could state a claim for discrimination against the university under Title I of the Americans with Disabilities Act (“ADA”). See McGuinness v. Univ. of N.M. Sch. of Med., 170 F.3d 974, 979 (10th Cir.1998). The court remarked that “a university[ ] may confer certain benefits on an individual and exercise a modicum of control over him without establishing a master-servant relationship” and that Graves’s Title I claim failed because, “as a threshold matter,” he made no showing of remuneration. Id.; cf. Seattle Opera v. NLRB, - 292 F.3d 757, 762 (D.C.Cir.2002) (applying the two-step test in determining whether auxiliary choristers were employees of the opera under the National Labor Relations Act, 29 U.S.C. § 152(3)); O’Connor v. Davis, 126 F.3d 112, 116 (2d Cir.1997) (holding that an unpaid student intern was not an “employee” under Title VII because the “preliminary question of remuneration [was] dispositive”: the intern “received ... no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised any such compensation”). The court further stated that a student is not considered an employee of the university “[u]nless [the] student receives remuneration for the work he performs.” McGuinness, 170 F.3d at 979.
In accordance with the viewpoints of our sister circuits, I would “turn to common-law principles to analyze the character of an economic relationship ‘only in situations that plausibly approximate ah employment relationship.’ ” Davis, 126 F.3d at 115 (quoting Graves, 907 F.2d at 74). And, no “plausible” employment relationship exists “[w]here no financial benefit is obtained by the purported employee from the employer.” Id. at 115-16. Thus, in analyzing whether an employer-employee relationship exists within the meaning of Title VII, I would adopt the two-step test applied by other circuit courts: first, the plaintiff must show that she was hired by the putative employer by “establishing] that she received remuneration in some form from her work,” and, second, after the plaintiff *359 establishes remuneration, the court will apply the common-law agency test set forth in Darden and Reid “to determine whether an employment relationship exists.” City of New York, 359 F.3d at 91-92. While “[t]his remuneration need not be a salary, [it] must consist of substantial benefits not merely incidental to the activity performed.” Id. at 92 (internal quotation marks omitted).
Here, Bryson has offered evidence that the volunteer firefighters in her department received benefits including workers’ compensation coverage, insurance coverage, gift cards amounting to $300 or less, training, access to an emergency fund, and personal use of the department’s facilities and assets. I would therefore remand this case in order for a jury to decide the disputed issue of “whether the benefits represent indirect but significant remuneration ... or inconsequential incidents of an otherwise gratuitous relationship.” Haavistola, 6 F.3d at 222. But see Evans v. Wilkinson, 609 F.Supp.2d 489, 494-97 (D.Md.2009) (holding that benefits, including a length of service program, a first-time homeowner’s assistance program, and a scholarship program, were insufficient to establish an employment relationship between a volunteer emergency medical technician and the rescue squad). Despite my agreement that remand is proper, I disagree with the majority’s conclusion that consideration of remuneration is just one factor of the common-law agency test and therefore dissent from its analysis.

. Although the Supreme Court has not defined "employee” in the Title VII arena, it has construed the meaning of this term under the National Labor Relations Act ("NLRA”), 29 U.S.C. § 151 et seq. See NLRB v. Town & Country Elec., Inc., 516 U.S. 85, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995). As in the Title VII context, "employee” is defined broadly under the NLRA: "The term 'employee' shall include any employee....” Id. at 89, 116 S.Ct. 450 (quoting 29 U.S.C. § 152(3)). There, the Court noted that "[t]he ordinary dictionary definition of 'employee' includes any 'person who works for another in return for financial or other compensation.’ ” Id. at 90, 116 S.Ct. 450 (quoting American Heritage Dictionary 605 (3d ed. 1992)).